by construction the plain, unambiguous provisions of the act, violations of which were not made criminal offences.

Section 4 unquestionably renders subject to the jurisdiction of your commission not only boxing, sparring and wrestling matches or exhibitions "for purses," but also all such exhibitions "where an admission fee is received." Whether the contestants are professionals or amateurs is immaterial if an admission fee is charged and received.

Accordingly, you are advised that your commission has jurisdiction of all boxing, sparring and wrestling matches or exhibitions to which an admission fee is charged, and that all persons holding such matches or exhibitions must pay to the Commonwealth 5 per centum of the gross receipts realized from admission fees. While your commission cannot prosecute persons holding amateur matches or exhibitions without a license, you are not without means of compelling obedience to the act of assembly. You can apply for and, in our opinion, obtain injunctive relief against any person, association or corporation which proposes, without having obtained a license, to hold boxing, sparring or wrestling matches or exhibitions for purses or where an admission fee is to be received.

So that there may be no misunderstanding on your part, we call your attention to the fact that, while you can compel persons, associations or corporations holding matches or exhibitions in which the contestants are amateurs to be licensed by your commission if admission fees are to be charged, you cannot, under section 6 of the Act of 1923, compel amateur contestants to obtain licenses from your commission. As far as contestants are concerned, only professional contestants, as particularly defined in section 6, need apply for and receive licenses entitling them to participate in athletic contests under your supervision.

From C. P Addams, Harrisburg, Pa.

---

## Vasil & Christake v. Slemmer et al.

*Landlord and tenant—Covenants of lease—Deposit against breaches of covenant—Default in rent.*

Where a lease provides that a deposit given by the lessee to the lessor is for the express purpose of securing the performance of all the covenants contained in the lease and not merely for the payment of rent, the lessee cannot require the lessor to apply such deposit to the payment of monthly rentals, and if the lessee defaults in paying a monthly rental, relying upon his right to insist upon such application of the deposit, the lessor may terminate the lease and recover possession by such legal proceedings as are therein provided; a tender by the lessee of rent for a later month, admittedly not covered by the deposit, will not continue the lease and may be refused by the lessor.

Motion to strike off non-suit. C. P. No. 5, Phila. Co., March T., 1922, No. 7757.

*W. Horace Hepburn,* for plaintiffs.

*Wolf, Patterson, Block & Schorr,* for defendants.

HENRY, P. J., 52nd judicial district, specially presiding, Sept. 2, 1927.—The plaintiffs sued in trespass for damages claimed to have been suffered by reason of an alleged wrongful dispossession of real estate. On Jan. 24, 1921, the defendant, United Retail Candy Stores Company, Incorporated, by writing, leased to the plaintiffs the store and basement at No. 637 Market Street, being the northeast corner of Seventh and Market Streets, in the City of

Philadelphia, for the term from Jan. 1, 1921, to Dec. 31, 1930, at an annual rental of $12,000, payable in equal monthly instalments, in advance, on the first day of each month, to the lessor, at No. 44 West Eighteenth Street, in the City of New York. The lessees were also required to pay the water rents and charges, instalment of the necessary meters, keep the premises in good condition and safe and proper repair, making all necessary repairs, and comply with all laws and ordinances, as well as insurance regulations, and, among other things, to indemnify and save harmless the lessor of and from all suits, claims and demands arising or growing out of or connected with the occupation or use of the said premises and the sidewalks connected therewith. The lease also provided for the deposit of the sum of $1500 on April 1, 1921, which was complied with by the lessees, and an additional sum of $1000 on April 15, 1921, which was not complied with by the lessees, but which lack of performance was claimed to have been waived by the agents of the lessor; which amounts were to be held under the terms of a collateral agreement which provided, among other things, that this deposit was to be held by the lessor "for the punctual payment of the rents and performance of the covenants and agreement in the within lease set forth to be paid and performed by the lessee. In the event that the lessee shall faithfully and fully pay the said rent and keep and perform each and every of the covenants, agreements and provisions of the said lease to be kept and performed by the lessee up to the end of and during the full term and period of this lease, then the lessor may use and apply said sum so deposited for the rent hereinbefore provided to be paid by the said lessee for the last two months' rent, so far as the same will apply;" with the right to the lessor to apply said deposit to the payment of rent in the event of default by the lessee at any time during the term. On Jan. 12, 1922, the lessor gave notice to the lessees that the lease would be terminated on Jan. 31, 1922, for failure to comply with its terms, and especially the payment of the $1000 on April 15, 1921, "as additional rent." Instead of the instalment of $1000 payable on Feb. 1, 1922, the plaintiffs paid $400, or possibly $500. The instalment on $1000 due March 1st was not paid, the plaintiffs claiming that the $1500 deposit, together with the $400 paid in cash, paid the rentals accruing on Feb. 1st and March 1st; and on April 1st, a certified check was tendered for $1000 for the April rental, which was declined by the lessor. On April 18, 1922, the plaintiffs were dispossessed, presumably by confession of judgment in ejectment under the provisions of the lease.

Under this evidence, the court granted the motion of the defendants for a compulsory non-suit, which the plaintiffs have now moved to strike off.

The $1500 deposit was clearly given for the purpose of securing the performance of all the terms of the lease by the lessees, not only the payment of the rent, but the performance of every other undertaking, and was to be held by the lessors until the end of the term, when it was to be applied to the last two months' rent, unless, in the event of prior default, the lessor saw fit to apply it to accruing rentals; but the lessees were never in the position where they could deliberately default and ask that the deposit be applied to accruing rentals, and then, by tendering the monthly rent payable, continue to extend the lease. When the lessees failed to pay the rent falling due on Feb. 1st and March 1st, and assumed to apply the deposit to these rentals, they defaulted in the performance of the plain terms of their lease and thus terminated it, so that they might well consider the deposit as applied to the remaining rent during the period of their possession, that is, up to April 1st; and thereafter they were tenants at will and subject to be dispossessed at any time by proper proceedings upon the part of the lessor. There is no contention of any

Vasil & Christake *v.* Slemmer et al.

irregularity in the manner of repossessing themselves on their part by the lessor, the sole contention here being that the rent had been fully paid at the time of the dispossession by reason of the application by lessees of the $1500 deposit and the $1000 certified check to rental which would accrue under the terms of the lease up to May 1, 1922.

This contention is unsound under the lease and the facts developed in this case. The lessees were in default and the defendants were within their rights in securing possession of the leased premises by proper legal procedure.

And now, to wit, Sept. 2, 1927, the motion to strike off the non-suit is overruled.

---

## Keever v. Ulrich.

*Mechanic's liens—Amendment—Limitations—New party—Notice of intention to file claim—Sufficiency—Act of June 4, 1901.*

1. A mechanic's lien filed by a sub-contractor against the owner for materials, etc., furnished the contractor cannot be amended after the expiration of the statutory period as provided in section 51 of the Act of June 4, 1901, P. L. 431, by setting up an agreement by the owner to pay for all the work after the latter had taken over the contract, as this would substitute a new party as contractor.

2. A notice of intention to file a claim is insufficient which merely avers the furnishing of labor and materials for a total sum mentioned without stating the character, quantity or dates of delivery and without averring that there was a lump sum contract.

Motion to strike off mechanic's lien. C. P. Dauphin Co., M. L. D. "D," No. 649.

*John R. Geyer,* for plaintiff; *Metzger & Wickersham,* for defendant.

HARGEST, P. J., March 30, 1927.—The plaintiff, on June 18, 1923, filed a lien against a property therein described, situate in the Borough of Middletown, Dauphin County, Pennsylvania, and against the defendant as "the owner or reputed owner." The statement of the demand upon which the lien was based averred that "the name of the contractor with which the claimant contracted is William Noel." It was averred that the claimant furnished to the contractor, during the erection of a double brick dwelling-house, certain bathroom fixtures, pipes, soil sinks, boilers, tin roofing, gutter and conduit pipes and other equipment and all necessary labor for the installation of the plumbing and fixtures, including a range, boiler and water heater. On Sept. 10, 1923, the defendant moved to strike off the lien for the reason that it did not appear that there was any notice of the intention to file the lien given, as required by the Mechanics' Lien Law, and that it did not appear whether the lien was upon a contract for a fixed sum or upon a unit basis or at a fair and reasonable price for labor and material. On June 12, 1924, the plaintiff prayed for leave to amend his lien so that it might read, "The name of the contractor with which the plaintiff first contracted is William Noel," and also asked leave to amend so as to show that the contract was made with "Henry A. Ulrich, also known as Al Ulrich," and that in the negotiations William Noel was in fact only an agent for "Henry A. Ulrich, also known as Al Ulrich." To this petition, and the rule granted thereon, an answer was filed and the defendant, on Sept. 7, 1926, filed a further petition to strike off the mechanic's lien on the ground that no *scire facias* had been issued thereon within two years.

A number of questions have been raised in these various pleadings. It is not necessary to discuss all of them. Section 51 of the Mechanics' Lien Law